Our last argument for the morning is 20 hyphen 7048 Hicks v. FG Minerals Mr. Little, if you'll unmute yourself, you may proceed. Thank you. May it please the court. I would like to first focus on the two primary errors of the district court. The first error being the finding that the Sheila Lewis McCabe Hicks lease did not describe two tracks. First track being 160 acres owned by Sheila Lewis. And the second track being, and I quote, other lands operated by McCabe Hicks and quote, other lands, as in the judgment of McCabe Hicks are necessary or appropriate for the same. And the second error being the court erred in finding that there was no contractual basis between the plaintiff Hicks and defendant FG Minerals. But before doing so, let me briefly set forth the broader context of these errors in connection with Rule 8 and Rule 12. Which ended this lawsuit without allowing any discovery. Now, up to this time, the focus has been on 12C. But the starting point and general rule is Federal Rule 8, which simply states that the complaints should contain a short and plain statement and that the pleader is entitled to relief. Now, your honors, I've never been accused of brevity. But the 42 page amended complaint and exhibits clearly met the requirements of advising the defendant of the plaintiff's different causes of action and the preliminary facts known to plaintiff at that time before discovery. The complaint was the starting point. And the next step should have been discovery. So that the depositions could have been taken Henry McCabe, the Cardinal Glass and FG Minerals persons who made the original management decision. So what were you going to discover that would change the outcome of this case? Well, your honor, depositions would have covered why were these royalties paid from 2010 to 2018 and then discontinued. Going even further back, the deposition of Sheila Lewis. It was not known whether she would admit or deny the allegations of fraud and misrepresentations. So the there were. She answered. Well, I guess not. So go ahead. Sorry. Okay. So it was. And we were all in agreement on the high standards of motion to dismiss. In fact, this lawsuit was just brought to a halt without any discovery. And there were many things that should have been discovered and could have been discovered. It was a long drawn out deal. Now, I guess what I guess what I'm wondering is why the instrument doesn't control the outcome. I mean, how do we get to things outside of the instrument? Well, that instrument was one of four instruments and critical instrument with the management managing services agreement. And that gets into the second point of error. But let me focus on the Sheila Lewis lease. In some ways, the Sheila Lewis lease seems so obvious. Now, it's a rose is a rose is a rose. The words are the words are the words. So what are the words in the Sheila Lewis lease? The words are clearly track one and the specific hundred and sixty acres northwest quarter section 13 and track two. And there are no doubt there is a track two. Why do you say that? There's track two and then there's a big space that's empty, suggesting that they didn't include a track two. And then. The parenthetical sometimes referred to collectively as the property. This was a this was a form lease, was it not? Most of your honor, at least that. And as alleged, it was a lease that was put together by Henry McCabe from several different prior leases that he had prepared. Now, he was not an attorney, but he was a very experienced sand person. He had had sand companies. He had. In fact, he became the operator and the builder of this plant. Well, but but it actually worked to his advantage the way this is written. Well, I think the way I understand the Lewis. The Lewis lease and feel free to correct me, but let me describe how I read it. That there's this one tract, the northwest corner of section 13, et cetera. And the lease allows him and his business partner to mine silica from that property. And also to produce, transport, process, store, blend, sale and ship sand. From that property that comes from that one small piece that was described at the beginning. Plus other lands as. As in the judgment of McCabe Hicks are necessary or appropriate for the same. So. If McCabe Hicks mine silica from a place other than this one piece of property. They can. They can process it on Miss Lewis's property. But the only royalties that he owes to Miss Lewis are for silica mine from this piece of Miss Lewis's property. In other words, and this apparently happened. If he quits mining silica from Miss Lewis's property. And minds it from adjacent property. He can still use Miss Lewis's property for a processing plant. Without paying anything to her, there's nothing required in this lease. Nothing that he has to pay her except royalties on the silica mind from her property. So, he has the right to use her property. Not only to mine silica from it, but he could quit mining silica from her property. Therefore, no royalties and can still process silica from other properties. As long as McCabe Hicks was operating that property. Am I correct? But it is, it was drawn up for clearly that plant could process sand from all from many other tracks. And that's that's common. Now, as, as alleged in the petition, the oral agreement was that this is Lewis would be paid. Now, the best interpretation of that Lewis of that lease is you don't see it in there. But as I alleged, Mr. Hicks said in his dealings with Mrs. Lewis, she was to receive this additional royalty. She was supposed to receive royalty once. I'm sorry. She was supposed to receive royalty on silica mine from other McCabe Hicks property. Yes. That's in the complaint. But it's, but it's interesting. As I understand the series of documents here, when FG minerals entered into another lease with Miss Lewis more recently, isn't that correct? That's in the record. Yes. And what it does is it. It doesn't require any royalties. From from FG minerals. But if but if FG minerals uses her property, in other words, continues to lease her property, and it uses it just to process the silica from other lands. She gets paid now. She gets paid for FG minerals using her land, even if. FG minerals doesn't mind any silica from her land. And. The reason that's necessary, as I understand it, is because the original lease. Of Miss Lewis with McCabe Hicks. Allowed McCabe Hicks to use her land to process silica from other, excuse me, from other lands operated by McCabe Hicks. Now that McCabe Hicks isn't operating isn't using the processing plant, but it's FG minerals. They needed something to allow them to stay on her land to process the silica. That they're mining from other property and they don't pay royalties to her. It's just a flat annual rate. Am I understanding the transactions correctly? Well, I would have loved to have taken depositions to have learned more about those transactions, but the, as I understand the leases. FG minerals, which is the successor to McCabe Hicks, the direct successor. They no longer pay to Sheila Lewis, the same royalty. So instead of the same royalty, they're paying these other. They're not paying any royalty because they're not mining any silica from Miss Lewis's property. Isn't that right? Well, not at this time, but there certainly could happen at a later time. And they're still stuck. They're still under that lease that would require them to pay royalty to her. They have a second lease with her. Well. Is there anything wrong about that? Excuse me, again? I thought this lease that has a fixed payment that they pay for using her land, for leasing her land. Does that replace the original lease that Miss Lewis entered into? I understand they have purchased 30 acres. And unfortunately, I don't know, understand all of the details because we were never allowed to take depositions, Your Honor. But I do know that they purchased 30 acres and they paid her for those 30 acres. But how that all connects, I'm not clear. I would love to be able to take depositions and find out. Counsel, can I ask you a question? I want you to tell me what the legal description and track to is. Your Honor, at the time, there were no adjacent lands yet under lease or purchased. And so it was described generally as the other lands that McCabe and Hicks were going to use or thought could be used. I mean, if you'd like to reserve a little time, I'm happy to continue. That's fine. I'm okay if you'd like to reserve. Excuse me, Your Honor. I didn't hear. No, I said that's fine. With me, at least. Okay. I do want to reserve. Okay. Why don't we hear from Mr. Butcher then? Go ahead, Mr. Butcher. Thank you, Your Honor. May it please the court. I'm Scott Butcher. I'm here on behalf of FLE FG Minerals. I think, as submitted in our briefs and based on my hearings and questioning for opposing counsel, I think you have identified the issues in this case without much trouble. It's relatively straightforward. This is a diversity case removed from state court under Oklahoma law. Whether or not a contract or a written agreement is ambiguous or not is a matter of law for the court. It is appropriate for the court on a motion dismissed to consider the language of the agreements on which Mr. Hicks' claims are based. He does not have a direct contract with FG Minerals for this overriding royalty. It is a reservation out of the lease he had with Ms. Lewis. And so you have the first lease with Ms. Lewis, an assignment that reserves the royalty out of Ms. Lewis' lease, and then a subsequent assignment to FG Minerals. Ms. Lewis' lease, as a matter of necessity, could only have covered the 160 acres that Ms. Lewis owns. And I think the language of the… Is that in the record that this is all of the land, that this lease, the original lease, covers all of the land she owned? It was undisputed below that that was all of the land that she owned. It's certainly all that's described in the lease. In what way is it undisputed that that's all she owned? Mr. Hicks' claims is acknowledging that the lease covered 160 acres that Ms. Lewis owns, and is asserting that the language of this lease, that the Track 2, is supposed to be covering other properties that they were in the course of trying to negotiate leases with other landowners for, but they had not concluded with at that time. That is Hicks' allegation as to how to try and give some meaning to Track 2. You're saying the complaint alleges that what was going to be Track 2 would be other land that McCabe Hicks would acquire? I'm saying Hicks alleges that, yes, in his complaint. That is his allegation that Track 2 is actually supposed to describe other property. Now, I think it's clear from the lease that it doesn't, but that's his allegation. We started on this path when you said it's undisputed that Track 1 is all the land owned by Ms. Lewis. And I'm curious where I'm going to find that in the record. Does the complaint allege that this was all the real estate owned by Ms. Lewis? On my memory, I don't know if the complaint itself said that. I believe, though, that Mr. Hicks' reply brief on appeal acknowledges that 160 acres is all that Ms. Lewis owns. So, counsel, let me ask you this. I want to assume something, and maybe Judge Hartz is interested in this or not, but let's assume that it's not all of the land that she owns. What part of this instrument captures lands that she doesn't own? I don't think any part of this instrument captures lands that she doesn't own. And I think it's really clear when you read the legal description, right, that it just describes 160 acres. And then in the subsequent parts of the lease, Mr. Little tries to allege that it's not a form. I think it's perfectly clear that it is a form, as argued in our briefs. Everything in this document is a sans serif font, apart from the title description. And then it leaves blanks that are actually filled in by hand on appellate record pages that they believe 114. And those blanks that are filled in are calculations of how much upfront payment, which was a down payment on the royalty, was owed to Ms. Lewis. And it's calculated at $5 an acre times 160 acres is $800. And it does that not once but twice. And it's doing that on the basis of calculating what the acreage for the property is. And I think that makes it crystal clear that if, to the extent the legal description for tract one wasn't clear enough on its own, the fact that the remainder of the document treats the property as comprising 160 acres makes it all the more clear. But that's all that this, all the Lewis lease covers is her 160 acres. So one thing that concerns me is that you have tract one specifically described. You have tract two, which is a blank. And then you have something that basically describes tract one and two as the property. Right. And I'm just wondering if you have a position on whether the lack of description of tract two and Mr. Little's position that tract two meant anything else that they acquired is somehow violates the statute of frauds by because it doesn't have a description. Whether or not. So the lease itself, right, as alleged by extension frauds. I mean, at least at least in part. I believe that's right. It would violate the statute of frauds because it's it is a contract relating to real property would fall within it. We didn't get that far. And so, of course, in the case to be arguing on that are the basis of our motion to dismiss was this lease read on its four corners only covers the 160 acres described and that it calculates its royalties on and that Lewis actually that Miss Lewis actually warranted title to. And so the fact arguing more than it might have covered more about. And I guess that's my concern because it sounds to me in the Mr. Lewis will get it or Mr. Little get a chance to to address this but it sounds to me like track two is defined orally outside the four corners of the contract of the lease. And so, I mean, I don't, I don't see how that ever, ever comes into play anyway. And the only thing in addition to that is not only is it defined orally it's defined on as they tried to plead it to find an orally in discussions between McCabe and Hicks the partners who were both the original lessees, not between orally between Hicks and actually minerals and not necessarily between Hicks and Sheila Lewis, all these oral discussions, which shouldn't matter because we have a written agreement. It's unambiguous and defines the rights of the parties and can't be altered by subsequent course of performance or anything else. All of those oral discussions aren't even alleged to have been oral agreements with FG minerals, and so there's no way they could have altered the rights or enlarge the rights that Hicks had as to FG minerals. I want to challenge something you said that the original lease doesn't refer to any other land, except track one. Okay, you read what's at the top of page two. That begins with the parenthetical sometimes referred to collectively here in as the property. It seems to me that the rest of that language allows McCabe Hicks to use track one for processing silica quote from other lands operated by McCabe Hicks. That's on that's at the latter half of the fifth line on the paragraph at the top of page two. Yes, I maybe I. That's what's so strange here to me is if McCabe Hicks, Mr. McCabe is the one who drafted this, he gave himself an awfully good deal. Because he's allowed to use Miss Lewis's property to process silica from other land without paying her a penny as long as he doesn't mine silica from her land. I think that's right. I'll go ahead. No, I'm curious. I mean, it's, it's kind of remarkable when it says that but that certainly seems to be what it says. And that's why I was asking you about it and that's why your client FG minerals, when they wanted to process they already had processing equipment on her land, maybe they have a plant of some sort. They wanted to continue having that on her land, but they didn't have any right under the lease to process on her land silica obtained from from FG minerals land. It's only land operated by McCabe Hicks that's covered. So that's why they have entered into another lease with her paying a flat rate for the use of her land. And you're, you may be familiar with those transactions but it's like it struck me as very strange to McCabe Hicks had this extra benefit from the lease that could allow them to use her property for 50 years without paying her a penny. So I think you're reading this correctly. I think you are reading it correctly. I mean you're initially asking me because I had said that the, the least doesn't refer to any other properties and I'm in describing what was being leased the description of the property subject to the lease. You're right that this clause that Hicks has cited refers to the fact that sand mine from other properties might be processed on the lease, and that, in a different sense I guess is a reference to other properties but of course this is the least defining the uses to which the lessor was being allowed to put the property. And I think that your construction of this lease is exactly right, that, in fact, I think this is 25 years with the right of renewal from another 25 years. So, arguably, if they had, they had never mined sand off of her own property, that might create a consideration problem as a practical matter, they performed the lease as contemplated that in mind all of the sand they could from this property until they practically could mine no more paid her the royalty the entire time. And then when they reached the end of the same they could practically mine for her property will that was a situation where they had the plants on her property, but technically would not have owed her anything because they weren't mining sand from her property, and thus that amended the lease to create just a term rental, so that they continue to pay. Not only would they not have to pay or anything but they also wouldn't have the right to do it under the original lease that that was subleased to them. They're not allowed to use that land for processing sand off the property, unless it's land operated by McCabe Hicks. So, if they, they weren't just being nice by entering into the new lease with her under the old lease they had no right to process saying from from FG minerals property. They didn't have any right to process that sand and equip on with equipment on this list with Miss Lewis's property. I'm not certain whether or not that's actually what would have happened because they went ahead and amended the leads. So that wasn't contested below but of course it wasn't contested because FG minerals was happy to amend the lease and pay her on a term rental and continue under that arrangement, rather than try to assert that they could continue to use her property without paying her anything. And so that just never came up. So they didn't process any of their own sand on Miss Lewis's property, until they entered into the most recent lease with her. I think there may have been some sand use for for blending purposes on that on that lease but though she was paid the full royalty the entire time that they were mining sand from her property. Excuse me, it looks like we might have lost judge Phillips, or you're here. Okay. I don't know if you can see me my pictures gone but let me. Yeah. Gee, I'm sorry. I can see all of you and hear you. So that's good enough for me. Well, you're about to ask a question so feel free to interrupt and say you have a question, or just to start it so there you go. Oh good. Nice to see you. Okay. Oh, the clock's been running. I think it's been running about a, let's return it to two minutes 30 seconds. Yeah 228 is good enough. And Mr butcher may be done anyway. Do you have more to present Mr butcher. I think what I have to present is, is, you know, basically restating what we've already put in our briefs I'm happy to answer further questions central have them. At the end of the day, this is appealed from emotion dismiss, and that's reviewed de novo, and it's based on a review of the four corners of the agreement, which is also reviewed de novo. Now my wife's going off because I haven't moved. But at the end of the day, the leases as clear as any agreement written between attorneys is ever going to be about what's being leased from this Lewis. Now, the document that actually creates the creates the royalty is not the lease itself even but an assignment of that lease which just refers to the property, employing the same language. And so, to the extent, I mean what they've reserved an override on is the property is referred to in the assignment, which is the property covered by the lease, which is 160 acres that Miss Lewis owned, and which is, I understand has never been disputed that that's all that she knows. Unless you have questions I yield my time. Questions from okay Mr little you saved a couple minutes, turn on your mic and you can. Thank you. Can you hear me. Yes. Okay. First of all, on this lease. We've alleged is not a lease form is a form put together by Mr. McKay, if you look at it. I mean, this is not going to be a lease form, you'd never have language for this form of a lease that you could go to a store and purchase. More importantly, there's been on under the track to legal description, it's been said that it is a blank. But the track to legal description is at the bottom of the page. It is at the next at the top of the next page that you see the legal descriptions of track to. So, so read, read me that read me exactly what you say the legal description is quote, and it's in the middle of that paragraph. Other lands operated by McCabe Hicks. That's one part, and other lands in the judgment of McCabe Hicks are necessary or appropriate for the same. Now, if you read that language carefully. The same refers back to mining operating everything else that has been talked about on the Sheila Lewis lease. Other words, the purpose of this second and let me also tracks one and two are described and referred to multiple times later in this same document. Now, if there were not two tracks. Why would there be the later references to tracks one and two. Now the references to tracks one and two are clear. Now, sometimes they create ambiguities as to how they fit together. But, I mean, it's clear throughout this lease that that there were two tracks and two tracks. Let me, let me, your time's up, but I have to answer this question because the very 1st language at the top of page 2 before the language that you say gives the description of track to. It says open sometimes referred to collectively here in as the open quote property close quote, close print. Which tells me, I would think this is the natural reading. Maybe the only reading is that whatever it is that's included in the word, the property. It's got to be something that preceded that parenthetical. And the language you're referring to is language after that parenthetical. That doesn't make sense. Even for lay people to write it that way. But your honor, if you read further, and I understand what you're saying, and the logic of that, but if you read further, there are later descriptions referring to track one and two as the property. And it's clear later that both tracks are described as the property. Now, that may well be an ambiguity, but it cannot be assumed on the, on the face of this document. That there's not a 2nd track. It refers repeatedly to a 2nd track and at times it describes the property as including tracks 1 and tracks 2. Now, let me briefly also refer you to the surfaces, the master services agreement, which is critical to this. And let me just read quickly because it shows how all of these 4 documents fit together. And this is an agreement between the defendant, Cardinal Glass, and Folsom. And where is that in the record? Yes. Where? Exhibit M. Pardon? Exhibit M. Okay. Okay. And it is understood and agreed by all of the parties to this agreement. And that's the defendant, Cardinal Glass, and Folsom. That Folsom's assignment, and that's the assignment to the defendant, is subject to the rights of Lewis under the lease, the Henry F. McCabe overriding royalty, and the Troy Dwayne Hicks overriding royalty. And here's the critical language. And those interests will continue to be honored and aided. So, you have the first document of the Sheila Lewis lease. You have the 2 assignments reserving the overriding royalties. And then you have this final document signed by the defendant, McCabe, and also Cardinal Glass, saying that those interests specifically described will be honored and paid. You also have the facts that they will be paid. Mr. Little, you're quite over your time, so try to wrap it up as promptly as you can. The other ambiguity, the latent ambiguity, is the fact that these were paid from 2010 to March 2018. Contrary, I mean, that alone creates the latent ambiguity as to explain, well, if there wasn't a Track II, why were these royalties paid from these other lands to McCabe and Hicks for approximately eight years? Thank you. Judge Hartz, would you indulge me one question? Please, I may have a question, too. So, Mr. Little, I'm just curious. Okay, so this Track II thing's a real head-scratcher for me, because I think everybody agrees that Track I is 160 acres, is that right? Yes. Okay, I look down here and I see that the lease bonus, so to speak, is computed on the basis of $5 a net mineral acre in Tracks I and II. And then it says that they paid $800 cash in hand. So that pencils out to a bonus for 160 acres. And so I guess my question is, if Track II contains definable additional acreage that's enforceable by your client, where did they pay the bonus for that? Where do we see any of that? I mean, because it seems to me that that just supports the idea that there is no Track II, that that's a blank, undescribed track that, frankly, for purposes of this instrument, doesn't exist. Your Honor, the answer is that at the time this lease was prepared, there were not in existence the legal descriptions, and so they used the general language of other lands. It was always anticipated that there would be sand brought to this plant from other lands, and there were other lands identified by McCabe Hicks. And so from the beginning, and it is common in the industry that you bring in sand, but the reason this, with Sheila Lewis, that figure was, that was the amount of acreage she had. If there had been other land already identified, then there could have been another clause. But the fact that there was not another clause at that time does not eliminate these other general descriptions of other lands that's clearly described in that part following Track II. Mr. Little, Judge Phillips has a question, I think. No, I don't. Well, I'm sorry. I could see you and still couldn't tell whether you were talking, so I apologize. Mr. Little, you said that there were royalties paid between 2010 and 2018 on silica mined from other property. Is that right? The Nelson land and other lands. That's in your complaint? Yes, sir. And that was paid to whom? McCabe Hicks. Okay, thank you. Thank you, gentlemen. Case is submitted. Counselor excused.